Our first case this morning is Deon Patrick v. City of Chicago, Ms. Masters. Good morning, and may it please the court. The verdict in this matter cannot stand for two primary reasons. First, the admission into evidence of Mr. Patrick's certificate of innocence was unfairly prejudicial and reversible error. It introduced into the trial a judicial finding on the key disputed issue of Patrick's innocence that was impossible to overcome. Second, the jury was allowed to reach a verdict on the fabrication of evidence claim and related counts based upon allegedly fabricated evidence that was never used at his trial, his criminal trial. This morning I will address those arguments. Time permitting, I will also address the failure to sanction Patrick for conduct that the judge found was chilling in its implications for our justice system, and we will rely on the brief for the cumulative error argument, which includes the golden rule violations, unless the court has questions. Turning to the COI. Good morning, Ms. Masters. Good morning. Judge Rolf. Was your argument at trial that Patrick's confession was neither coerced or false? Was our argument at trial that he was neither coerced? I couldn't hear the second part of your question. I'm Nor false. Yes, that is correct, that he wasn't coerced and his confession was true. That was our argument. Turning to the COI, the admission of Patrick's COI was reversible error because it deprived the defendants of a fair trial. The COI was a judicial pronouncement that a judge had already resolved the key issue of Patrick's innocence, and thereby his credibility, in his favor. The manner in which the COI was issued meant that it was of little probative value, yet it was highly prejudicial. How was this evidence used in the plaintiff's theory of the case? The transcript of the Motion in Limine hearing where this issue was discussed, the judge was focusing on what the Certificate of Innocence says about the state's attorney's position on whether the plaintiff was guilty or innocent, which is not admissible. It doesn't matter what the state's attorney thinks in a civil trial. That kind of testimony would be improper because the jury has to draw its own conclusion in this civil case. How was it used? Was that how it was used in the way that the district court judge was thinking about it? Yes, Your Honor, it was. The way this trial began, its opening and closing, was this is a three-step process. First, he gets his conviction vacated, then he gets a pronouncement he's innocent, and then now we're coming into trial and basically treating this like it was a damages trial. The fact is that once that comes in, there's no limiting it to this is just what this, first of all, just what the state thought, but let's backtrack even a few seconds on that, which is the state didn't take a position on the COI. The COI is filed and the state takes no position, and then asserts the deliberative process privilege as to its reasons behind it. Now, what the district court says in the transcript, it's clear. He says, well, that's some evidence of innocence. Now, once that comes in, there's no sort of limiting that to this is what the state thinks, and besides that, as I've just pointed out. But it also had, Ms. Masters, it also had probative value. It provided background to Patrick's release from prison and exoneration, as well as allowed him to demonstrate the required favorable termination requirement for his malicious prosecution claim. And the judge certainly did instruct the jury that whether he was guilty should be considered as only as many of many factors in considering his claim. And, you know, even assuming error, surely that would make its admission harmless. Your Honor, we dispute that there is any way a judicial finding of innocence that comes into a case where innocence is the issue could ever be harmless error. In fact, there are multiple cases we cite in both our opening and in our reply brief, which show that it isn't harmless. That, in fact, there are two problems with it. One, it takes away from the jury essentially a key credibility issue. So there's already been a determination that he is innocent. That is a key issue in this trial. And the second thing is it's a judicial finding. So what the court order did was it sort of puts us in the place of having to go into trial and say, in front of a jury of 12 people, and say, well, that judge, he kind of ignored that or pushed that to the side. That's just not a realistic approach. And, I mean, to really put upon... Sorry. I'm wondering why you haven't weighed this argument by failing to properly develop it. You know, you confronted this only in a footnote in the brief. Well, Your Honor, in the post-trial motion? At all, it seems to me. Well, Your Honor, we didn't have... Under Rule 103B, we preserved the issue for appeal by getting a ruling on it in a motion in limine. And Rule 103B says that once you've raised it, you don't have to do anything else to preserve the issue. And the second part of that is the two cases from this court, the WIPF case and the Richmond case, which say you don't have to raise it in a post-trial motion. I would also... But I find it so unusual. You know, you start out with this argument, which I take it, you know, you think it's your best. And yet, in the brief, there's only a footnote. Because, Your Honor, we had argued this ad nauseum in the district court, and that preserved the issue. And it's not a brief in... I mean, I'm sorry, it's not a footnote in our post-trial motion. There was no case that required us to fully set out all of the merits of this. And the other issue on waiver that I would say to the court is the court actually does address the merits of it in the post-trial motion ruling. So that's, in our view, not a point well taken that we could waive an argument that we had gotten a firm, definite motion in limine ruling on. I wanted to go back to one other point that Your Honor asked me about, which is the favorable termination element. To the extent that goes to favorable termination, there was other evidence upon which Mr. Patrick could rely. It was his actual testimony. All of the conflicting evidence about whether he actually was innocent or not could have come before this, could have been used to establish the element of favorable termination. And even if it was... So there was alternative, far less prejudicial ways to go about this. And instead, we had a judicial finding on this key issue. And as I've mentioned, we cite multiple cases to the court that that's not a harmless error. Because it does force... Because judicial determinations, judicial findings of fact, are just likely to be so highly weighed and given credit by a jury. Were there discussions about stipulating to this element of the malicious prosecution claim to take the certificate out of the question? Your Honor, I'm not aware of that. But again, defendants shouldn't be put in the position of you have to stipulate to avoid something that's unfairly prejudicial. I mean, we're entitled to rely upon the rules of evidence and that those rules be enforced in any case, whether we could stipulate to something or not, it was still their burden of proof. And we should not have been in this position of having this highly prejudicial piece of evidence come into trial, again, on the key issue here about innocence. If the court has no other questions on this at the moment, I want to move on to the fabrication instruction. And on the fabrication claim, we are entitled to J&OV. And as further explained in the briefs, relatedly, J&OV for defendants Berdy and Glinski on the failure to intervene in federal conspiracy counts, and a new trial just on those two counts, failure to intervene in federal conspiracy for defendants Viaditta, Johnson, Abreu, and O'Connor. Before we get to the merits of this argument and the claim of instructional error, does this ultimately make any difference? Because there is no challenge to, no separate challenge. You've made some global arguments about why the verdict needs to be tossed, but there is no separate challenge to the verdict on the Fifth Amendment involuntary confession used at trial claim, count one, or the malicious prosecution count, the state law claim and the state law conspiracy that sort of piggybacks on this malicious prosecution claim. Are those claims enough to support the $13 million verdict? Assuming that we don't prevail on new trial, yes, those claims are enough to support the compensatories. The reason this argument matters is there are two defendants, defendants Berdy and Glinski, for whom this is their only source of liability. It's a fabricated evidence failure to intervene in federal conspiracy. And as for the other defendants, the reason it matters is everyone's been, all of them have been subject to punitive damages. And if there is less liability on any one count, or in this case we say three counts, they are entitled to a new hearing on their punitive damages assessment because they've engaged in fewer acts of culpable conduct. Ms. Masters, how was the integrity of the justice system impugned given that Patrick's perjury came out at trial? You were able to argue at trial that Patrick had lied and was unreliable, were you not? You were allowed to look into that in great detail. He admitted that he had lied. The jury knew all of this. How do you think this system was impugned? Your Honor, that's the findings of the district court has to do with the justice system. And what we're relying upon is that the district court issued an opinion that didn't mince words. It says his conduct is chilling in its implications for our justice system, deeply unsettling, that he felt entitled to lie, that his behavior was completely at odds with the goals of the justice system, and that in fact his discovery violations, quote, in a case such as this where plaintiff claimed to have been imprisoned unjustly for 20 years cannot be overstated. And then there's no sanction. So our argument in this court is that's the abuse of discretion there. Whether or not we were prejudiced, and the counsel is correct, Mr. Patrick's correct, Your Honor's correct, we're not disputing that it's abuse of discretion of review. We're not challenging that on this case. But these other findings are out there from the district court that the conduct was chilling and all of the things I've just read. And our argument that we placed before this court today is, does that warrant a sanction? What are the roles of the court in this type of case where those findings are made by a district court judge? You're well into your rebuttal time, you know. I see I am into my rebuttal, and if Your Honor has no other questions? Thank you. Good morning, Your Honors. May it please the court. After Judge Guzman conducted six days of pretrial hearings and a six-week trial with 32 witnesses and 164 admitted exhibits, a jury found each of the individual appellants liable for one or more of the following, coercion, fabrication, malicious prosecution, conspiracy, and a failure to intervene. And the jury not only found liability and compensatory damages against these individual defendants, it also found that they had acted maliciously or in reckless disregard of Mr. Patrick's constitutional rights. And as Your Honors know, the city was then added by stipulation as a liable defendant in the case. Now appellants ask you to reverse that verdict on primarily, as she noted, three grounds that have been raised here. And I want to begin by focusing on the Certificate of Innocence, and I want to answer Judge Sykes' question about a stipulation. Although it's going to take me a second to get to that precise answer. This case, this issue, the COI issue, is about the element of malicious prosecution that required Mr. Patrick to prove that his underlying criminal case was terminated in a manner indicative of innocence. That's an element of the malicious prosecution claim. At no time, even though it was absolutely available to them, the defendants never offered to stipulate that that element of the underlying proceeding was met as a way to avoid the Certificate of Innocence coming into evidence. Would you have accepted that stipulation? Judge, I don't know if we would have accepted that stipulation. Probably not. Probably not. You wanted this piece of evidence in. It's very powerful. It's a very powerful piece of evidence, Judge, and it should be a powerful piece of evidence, but what it's not... But they gave that to you by not offering to stipulate. Absolutely. And they handed it to you. Absolutely, Judge. And more importantly, and Judge St. Eve made this point when she ruled on this issue in the Harris case, although it is a powerful document, it is a document that says nothing regarding the CPD officer defendants. As Judge St. Eve said in Harris, the court rejects defendants' argument that the risk of unfair prejudice would substantially outweigh the highly probative Certificate of Innocence, especially because the Certificate of Innocence does not make any findings regarding the CPD officer defendants. Did the Certificate of Innocence in that case, was it actually litigated or was it... It was not... Was it summarily entered as this one was? If I remember correctly, Your Honor, as in this case, the state's attorney's office did not oppose the Certificate of Innocence when the petition was before the chief criminal judge of Cook County. How common is that? Judge, I'm sorry. I really can't answer that. I think in cases where the... I'm sorry. Either because of DNA evidence or recanted testimony or a police officer who is found to put cases on numerous people like the Guevara case. In those situations where the state's attorney chooses to vacate, to move, to vacate the conviction of the criminal defendant, I believe in those cases it is not at all unusual that when the next step occurs and they go to the chief judge and request the certificate, that they take no position on the certificate. My question's at the top of your opponent's argument about how this evidence was used in this case. It gets at this point. It's irrelevant and inadmissible what was in the head of the state's attorney. You can't use this as some sort of an opinion testimony about guilt or innocence. Let me try to clean that up if I may, Judge, because I think the law really requires that the Certificate of Innocence, absent a stipulation offered, and there was none offered, has to go into evidence to support the terminated in a manner indicative of innocence. And the reason why that's necessary is that the Illinois Supreme Court ruled in a case called Swick v. Leotow, and it's not going to surprise you that it was also Judge St. Eve who directs, when she ruled in Harris, directed all the parties to that case. And what that case holds is the bare use of a nali pasqui order, a motion to dismiss by the state's attorney, to vacate a conviction, which did not state its reasons for its entry, did not establish that the criminal proceedings were terminated in a manner consistent with Swick's innocence. In other words, Illinois law says as a matter of law that the mere moving to vacate a criminal conviction by the state's attorney's office is insufficient to meet the terminated indicative of innocence element. So when Mr. Scahill stood in front of Judge Guzman at the oral argument, and you can read it on pages 1 to 14 of their supplement, and he said, oh, Judge, Judge, the motion to vacate by the state's attorney, that's enough to meet the element. Judge Guzman raised his eyebrows and he looked at him and he said, really? You think that motion is sufficient? And he proceeds to say that the state could have nallied the case because they thought the defendant was innocent or because witnesses had died? A whole bunch of other reasons. A whole bunch of other reasons. Mr. Trainor, did the defendants request a specific jury instruction to the effect that the certificate of innocence was not to be considered as evidence of Patrick's actual innocence? Because, of course, using the certificate of innocence to establish the favorable determination element of his claim is one thing. Using it to establish that he actually was innocent would be problematic. And we need to assure ourselves from the record that you were not attempting to use the certificate to prove to the jury that he was, in fact, innocent. So I think it's very important to know if they requested a specific jury instruction because this was in this from the very get-go. Judge Rovner, that is an excellent question, and the answer to the question is the defendants never requested an instruction to caution that the guilt or innocence of Mr. Patrick was not the ultimate issue that they were deciding and that it was only one factor for their consideration. But Judge Guzman was so attuned to the necessary balance on this issue that he, in the middle of the instruction conference, said, I want to give an instruction like that because I want to make sure, with all this argument flying back and forth about his innocence, that the jury has a clear instruction on how they may or may not rely. And so he crafted one that was then subject to input by all lawyers. In order to decide the claims in this case, you need not decide whether the plaintiff actually committed the acts he was accused of in the criminal charges against him. The question of whether the plaintiff is actually guilty or innocent of committing the acts described in the criminal charges against him may only be considered by you as one of many factors you may consider in determining whether his rights were violated, as he alleges. So it was Judge Guzman who had been hearing about this carping by the defendants, that this was unfair to them, put that in voluntarily to make sure that the jury was instructed in that regard. Everything the judge does downstairs is voluntary, so go ahead. Judge, did you have a question that, because you and Judge Robner were both asking at the same time. I'm used to it. I'm sorry. You know there's a lag where I am. There is, Judge. Did I step on one of your questions, Your Honor? No, you didn't. Before we leave this subject, that instruction was quite appropriate, I think. But it doesn't address the certificate of innocence in particular. So to Judge Robner's question, there was no instruction, limiting instruction, about the proper uses of the certificate of innocence. Nor was, nor to answer Judge Robner's question at any time was one requested by the defendants. Okay. Judge, just to tie up, I would like to leave the COI and move on to another topic, but I wanted to say one or two more things very briefly about it. First of all, as Your Honors know, every district court judge, to look at this question, Judges Bucklow, Lefkoe, St. Eve, Randa, Plunkett, a wide array of styles of judging, all have come to the conclusion, both that this is, that the certificate of innocence must be admitted on the termination in a manner indicative of the innocence element, and I believe that four of the five judges have also stated that it is a relevant factor for damages. Is there any precedent for rejecting a stipulation to this element as a means of excluding a COI? I'm not aware of any Your Honor. I wanted to say one last thing about the COI. You have on pages 1 to 14 the discussion between Judge Guzman and the parties about whether he was or was not going to allow into evidence the COI. And he rules, I'm going to allow it in. And then Mr. Scahill says to him, well Your Honor, I just want to be clear about this because I don't want to overstep any bounds. Are we allowed to attack the underlying nature of how the COI got issued by the Chief Judge of the Circuit Court? Can we attack Mr. Patrick's petition? Can we attack the fact that my clients, the defendants, never had a right to appear in court at 26th Street and argue that Mr. Patrick makes false statements in his petition? Are we allowed to attack it in many different ways? And it's in the order. And we don't object. We say that's fine. And Judge Guzman says that's fine. And that's how the trial played out. The Certificate of Innocence went in and they attacked it every single chance they got. In an opening statement they said it was not reliable. In closing they said it was not reliable. And every time they put on a witness they said, now sir, you didn't get a chance to go see Judge Beeble and argue that this was an unfair COI. And all the police officer defendants said, no, I never got a chance. They had every opportunity. To throw something out under 403, it has to be unfair prejudice. And these defendants had every opportunity to attack the COI. And Your Honor, the State's Attorney's view on these issues did not go into evidence. The State's Attorney took the deliberative process privilege at the depositions of the various State's Attorneys, both those that were involved and up the chain of command, and they just would not say what their reasons were for either vacating Mr. Patrick's criminal conviction or for not taking a position on the COI. So your concern about the State's Attorney's view somehow getting into the mix, that never came into this trial. If we could move to the fabrication instruction. Yes. Judge, I think your question to Ms. Masters, our answer as you know, because I think it came from our brief, is it really doesn't matter if you throw out the fabrication instruction because of the findings of liability for coercion, malicious prosecution, and State conspiracy. And so in a way it's a moot point. You could struggle with all these fabrication issues. The only way Ms. Masters said it was relevant was for punitive damages, that if somehow you threw out the fabrication against Bertie and Glinski and their punitive damages dropped out, that we'd need an entire new punitive damages trial because as to the other defendants, if they were only found liable for three counts instead of four counts, that that would be a basis to throw out the punitive damages. We disagree with that, Judge. The punitive damages instruction says absolutely nothing about the number of counts under which you find an individual defendant liable. It talks about the reprehensibility of the defendant's conduct, and that's not going to change from the jury's point of view if the judge got a single word wrong in the fabrication instruction. The impact of the defendant's conduct on the plaintiff, which in this case was 21 years, one month, and eight days in prison. The relationship between plaintiff and defendant, well that relationship was basically three days with Mr. Patrick locked in a room. The likelihood the defendant would repeat the conduct if an award is not made, and the relationship of any award of punitive damages to the amount of actual harm the plaintiff suffered, and these punitive damages were paltry in compared to the damages that Mr. Patrick suffered, 20,000, 15,000, and 10,000 for each pair of defendants that they found acted maliciously or in reckless disregard of Mr. Patrick's rights. I think, as I understand the argument, it's that a properly instructed jury would on the claim, the due process claim for, and it's really, we call it a fabrication claim, with the coercion claim, we call it a coercion claim, but they're really just, the coercion is a Fifth Amendment claim for compulsory violation of the right against compulsory self-incrimination. So that has to do with the violation of a trial right not to have a coerced confession be introduced against the defendant at trial. And then what everybody's calling the fabrication claim is a due process claim not to be convicted in an unfair trial based on false evidence. And if a properly instructed jury on this record could conclude that no false evidence was used at trial to convict this man, then it might weigh the punitives differently, even if it came to the same conclusion on malicious prosecution and the same conclusion about the introduction at trial of the coerced confession. So three responses to your question, Your Honor. Number one, in a way I think it's a moot point because no one disputes that Mr. Patrick's confession, fabricated confession, once the jury found that the confession was fabricated... That's not implicit in the Fifth Amendment count. I'm sorry, I don't... That finding is not necessary for the jury to find for your client on the Fifth Amendment count. The truth or falsity of the confession has nothing to do with the... As to the fabrication of evidence claim... Oh, okay. I guess to break it down into three parts, we don't agree with Your Honor respectfully that even if the fabrication count were to be thrown out, let's say Mr. Patrick's fabricated confession had not been read to his criminal jury, I still believe that in this civil rights trial, the coercion, malicious prosecution, and state conspiracy would be sufficient to continue to support the punitive damages. So let's put that to the side. But to get to your core issue... What else was there at the criminal trial beyond his confession and the impeachment of the line-up witness, Fay McCoy? Those are the only two, Your Honor, that we are asserting were used at his criminal trial. Let me give an example of one that was not used at his criminal trial. But did affect his liberty in some... Was a cause deprivation of liberty in some way, which is the standard this court applies. Let's take... Not anymore. Well, Judge, you did. The Hurt case has been overruled. Which case has been overruled? The Hurt case has been overruled. Judge, your overruling in the Hurt case, as I understand it, was not on this issue of liberty in some way, but was on the narrower issue where Judge Woods said that both the pre-trial detention and the post-trial detention was a due process violation. Yeah, I think you're reading that too narrowly. All right. Well, Judge... This is a claim for wrongful conviction based on false evidence being introduced at trial. That's the due process claim. And it's not under the Brady rubric. It's just a due process claim for wrongful conviction based on false evidence being introduced at trial. Judge, I need to use my last 30 seconds, if I may, to give at least one trial. I'll try to do two examples of a case where fabricated evidence, even though not introduced at trial, would still support a violation of due process. And here's an example. Bertie and Glinsky intentionally fabricate a document to prove that Daniel Taylor was out of lockup before 10 o'clock. Mr. Patrick has to go to a criminal trial to defend himself when one of his co-defendants was in a Chicago Police Department lockup. But he's not able to rely on that evidence for two reasons. One, the Chicago Police Department both created... That's part and parcel of your wrongful conviction claim. No, it's part and parcel of our due process fabrication claim. That's part of your fair trial violation. He was denied a fair trial because he couldn't... He couldn't use that defense. Right. And it was caused by a piece of fabricated evidence. Right, but that doesn't mean the instruction was appropriate. This isn't about the scope of the proofs in the case. It's about whether the instruction was erroneous. Well, Your Honor... You can use all that Taylor evidence to show that he was deprived of a fair trial and was convicted. But even if Your Honor were to... If Your Honor were correct about the... If this court is going to take the position that every piece of fabricated evidence must be used at trial, which to me is completely inconsistent with all the Brady analogy cases, but... This wasn't a Brady claim. If you're going to do that... You didn't bring a Brady claim. We did bring a Brady claim, and Judge Guzman respectfully threw it out inappropriately. Okay, but you're not relitigating that here. We sure are not. Okay. Your Honor, my point here is that because his false confession was admitted into evidence at his criminal trial, the fabricated confession that he signed, all those other issues are moot as to this case. We have a bucket. In this case, we have a piece of evidence that the jury found the libel defendants fabricated that was in fact used at his trial. So this debate about whether it has to be used at his trial or not is moot as to this case. Right, that's not what I was focusing on. I was focusing on the improper instruction that fabricated evidence, some fabricated evidence, was used to convict him at trial, and the jury wasn't instructed on that, nor was the jury instructed on the materiality requirement. Judge, we believe that the phrase, deprived in liberty in some way, the jury... That didn't survive Lewis. Okay, but Judge... The claims are separated out into a Fourth Amendment basket and a due process basket. Judge, but the due process basket, the way it played out in front of this jury, the evidence that was admitted, the arguments that were made, made clear to this jury that the deprivation of liberty we were talking about was the wrongful criminal conviction of Deion Patrick. They got that. Right. And so the fact that the words were omitted from the jury instruction used at trial could not... Once the jury found it was fabricated, they didn't... There's no dispute that in the record Mr. Patrick testified that they read my fabricated confession into evidence against me at my criminal trial. Right. Again, this is not a sufficiency of the evidence claim. It's an argument about the instructional error. Well, I think the instructional... Mr. Chenin, may I see if I understand your argument in a nutshell? It's that although the instruction did not specify that the fabricated evidence had to be introduced at trial, it made clear that the evidence had to be instrumental  and mirrored the language that this court has previously used to describe what is required to prove a fabrication claim. Yes, Your Honor. Yes, Judge Roebner. I would agree with exactly as the way you described it, and I would add that this court has also said that even if the wording of the instruction is in error, but through the evidence and argument to the jury, it is made clear to them what they are being asked to decide, that that is another basis on which the wording error may be found harmless. All right. Thank you. Thank you, Your Honor. Thank you. Thank you for giving me quite a bit of extra time. Thank you. All right. Ms. Masters. Your Honor, I want to pick up on a factual point and clarify the record that there is no evidence that Faye McCoy was impeached at Patrick's criminal trial with the lineup contrary to the representation made by counsel. As we point out in our brief, those citations don't support that claim, and we cannot find in the record where that happened. Is her testimony in the record? Her criminal trial testimony? Right. No, Your Honor, it is not in the record. That volume of her testimony is not in the record where it happened to her at the criminal trial. That's our point in our reply brief about that citation. Right. I guess I misunderstood it. I assumed that the transcript from the criminal trial was in the record and was just miscited or misquoted. No, it is not. Okay. In other words, the McCoy lineup report was not introduced at trial. No, Your Honor, let me clarify. The McCoy lineup report was introduced as a piece of evidence in this civil trial. Counsel's argument, Mr. Patrick's argument, is that the jury learned that at Mr. Patrick's criminal trial, the lineup report came into evidence and she was impeached with it. That aspect is not in the record as far as we can find it. The citations otherwise that are used to support that are the volume of criminal trial testimony that isn't in the record. It's to the directed verdict motion on their part and to Mr. Patrick's testimony in which he states the only evidence against him in this criminal trial was his confession. So what was the lineup evidence at the criminal trial? I don't know, Your Honor. It's not in the record. So there was no police officer who testified about the lineup? We just don't know. That's correct, Your Honor. We don't know. What I'm representing to the court is the citations provided in Mr. Patrick's brief don't support the claim and we can't find it. Now, is it in there and we've missed it? I can't swear to that, but we've looked. But in the civil trial, she was a witness. In the civil trial, she was a witness and her testimony about the lineup report and giving the lineup report, that is in the record. And relatedly to that point, I want to also just stress to the court that even prior to Manuel and Lewis, it was the law in this circuit that if you brought a due process wrongful conviction case, you had to show that the evidence had been introduced at trial and used against you to convict and that's because of the causation requirement. Right. If I can move back to the certificate of innocence issue, the issue here is unfair prejudice and whatever the state's attorneys thought or whatever the witnesses... Well, there were no witnesses. The fact is that what came into evidence was something entitled Order Granting Certificate of Innocence and the first paragraph was that says the court being fully advised finds by a preponderance of evidence that... and then the box is checked for Mr. Patrick is innocent. That is the problem because this case was about his innocence and whether he was wrongfully convicted and we had a judicial finding to that effect on the key issue and I would point out that there's been no citation to opposing authority to our authority that this is reversible error because it is so prejudicial. There's been discussion of district court cases but we cite to this court cases from around the country from appellate courts on that issue and to the extent that favorable termination was relevant, there was other evidence on that. The certificate of innocence proceeding is a separate proceeding that happens after conviction is vacated. There's not a dispute that Mr. Patrick had to prove that his proceeding was terminated in a manner indicative of innocence but the fact is that the Illinois statute states that certificates of innocence are issued for the purpose of the court of claims then going to the court of claims to award damages. The statute also specifically states that they're not to be given res judicata effect. Now the impact, of course, from our perspective at least, is having these come into evidence. It's practically like giving it res judicata effect because we are put to the task of then saying to a jury of 12 people, ignore what the judge has said. If the court has no further questions, we can rest on our groups. All right, thank you very much and thanks to all counsel. The case is taken under advisement. Thank you.